UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

KELLY L.,[1]

      **Plaintiff,**

v.

Case No. 2:21-cv-12328
Magistrate Judge Norah McCann King

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

      **Defendant.**

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Kelly L. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court the Court reverses the Commissioner's decision and remands the matter for further proceedings.

**I.     PROCEDURAL HISTORY**

Plaintiff filed her applications for disability insurance benefits and supplemental security

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

income on June 21, 2019, and June 28, 2019, respectively, alleging that she has been disabled since June 21, 2019. R. 86–87, 116–17, 205–15. The applications were denied initially and upon reconsideration. R. 138–43, 150–57. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 158–59. Administrative Law Judge ("ALJ") William Leland held a hearing on November 2, 2020, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 33–67. In a decision dated December 14, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from June 21, 2019, Plaintiff's alleged disability onset date, through the date of that decision. R. 15–27. That decision became the final decision of the Acting Commissioner of Social Security when the Appeals Council declined review on April 16, 2021. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On August 27, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 11.[3] On February 3, 2022, the case was reassigned to the undersigned. ECF No. 19. The matter is ripe for disposition.

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

---

[3] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of

social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

4

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

5

B.     **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential process evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e),

(f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 48 years old on June 21, 2019, her alleged disability onset date. R. 25. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 18.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: fibromyalgia, post-operative effects of mild degenerative changes of the feet, mild scattered degenerative changes of the bilateral interphalangeal joints and prominent cyst-like change in the left scaphoid, emphysema/interstitial lung disease, irritable bowel syndrome, bipolar disorder, depression, anxiety/post-traumatic stress disorder, polysubstance addiction disorder (alcohol and marijuana). *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 18–21.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 21–24. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a medical assistant, phlebotomist, and composite

job of medical assistant and office manager performed at the light exertional level. R. 24–25.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.*, jobs as an office helper, mail clerk, and cafeteria attendant—existed in the national economy and could be performed by Plaintiff. R. 25–27. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from June 21, 2019, her alleged disability onset date, through the date of the decision. R. 27.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Acting Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief*, ECF No. 16. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 18.

IV. **RELEVANT MEDICAL EVIDENCE**

    A. **2019 Inpatient Admission**

On September 30, 2019, Plaintiff's ex-husband took Plaintiff to an emergency department after she had expressed suicidal and homicidal thoughts. R. 457–64. On October 1, 2019, when it was determined that she was at risk of self-harm, Plaintiff was admitted for inpatient psychiatric stabilization. R. 463, 473. While on the inpatient unit, Plaintiff engaged in, *inter alia*, group therapy, and her Cymbalta prescription was increased. R. 473, 510. After Plaintiff denied having suicidal or homicidal thoughts and after it was determined that she had maximized her benefit from inpatient hospitalization, Plaintiff was discharged on October 3, 2019. R 470–77, 510.

B.     Linda Kelly, Ph.D.

On December 1, 2020, Linda Kelly, Ph.D., Plaintiff's treating psychologist, completed a two-page, check-the-box, and fill-in-the-blank form entitled, "Mental Impairment Questionnaire." R. 626–27. Dr. Kelly stated that she had treated Plaintiff on a weekly basis from August 27, 2020, to November 5, 2020, and on a bimonthly basis from November 19, 2020, until the date reflected on the form. R. 626. Dr. Kelly diagnosed bipolar disorder, unspecified. *Id*. Plaintiff's prescribed medications were Lamictal, Seroquel, and Cymbalta, and Dr. Kelly noted the following side effects from these medications: poor sleep, nausea/loss of appetite, fatigue, pain, gastrointestinal symptoms, shortness of breath, and difficulty walking or sitting for periods of time. *Id*. Dr. Kelly identified the following clinical findings that demonstrated the severity of Plaintiff's mental impairment and symptoms: "Pt. is alert & Ox3 with adequate cognitive functioning; however her bipolar disorder (anxiety/mania & depression) impact her ability to attend/concentrate – process information coupled with her fatal lung disease, fibromyalgia & prolapsed bladder & rectum[;] Pt is expected to face further decline with her terminal interstitial lung disease." *Id*. According to Dr. Kelly, Plaintiff's impairment had lasted or was expected to last at least twelve months, and she noted that it was "[t]erminal & progressive with a mood disorder & early trauma." *Id*. In determining Plaintiff's ability to do work-related activities on a day-to-day basis in a regular work setting, Dr. Kelly used the following scale to indicate how Plaintiff's mental / emotional capabilities were affected by her impairment(s): unlimited or very good; limited but satisfactory; seriously limited, but not precluded (meaning "the ability to function in this area is less than satisfactory, but not precluded in all circumstances. Individual would be limited in their ability to perform activity 15% of the time"); unable to meet competitive standards (meaning "your patient cannot satisfactorily perform this activity

9

independently, appropriately, effectively and on a sustained basis in a regular work setting"); and no useful ability to function (meaning "an extreme limitation, means your patient cannot perform this activity in a regular work setting"). *Id*. In addressing Plaintiff's sustained concentration and persistence limitations, Dr. Kelly opined that Plaintiff had an unlimited or very good ability to carry out very short and simple instructions; had a seriously limited, but not precluded, ability to carry out detailed instructions, sustain an ordinary routine without special supervision, and work in coordination with or in proximity to others without being distracted by them; and no useful ability to meet competitive standards in her ability to maintain attention and concentration for extended periods, perform activities within a schedule, manage regular attendance and be punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. *Id*. As to Plaintiff's understanding and memory limitations, Dr. Kelly opined that Plaintiff had an unlimited or very good ability to remember locations and work-like procedures, and to understand and remember very short and simple instructions, but had a limited but satisfactory ability to understand and remember detailed instructions. R. 627. In addressing Plaintiff's social interaction limitations, Dr. Kelly opined that Plaintiff had a limited but satisfactory limitation in her ability to interact appropriately with the general public, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. *Id*. As to Plaintiff's adaptation limitations, Dr. Kelly opined that Plaintiff had a limited but satisfactory limitation in her ability to respond appropriately to changes in the work setting, be aware of normal hazards and take appropriate

precautions, and set realistic goals or make plans independently of others. *Id.* According to Dr. Kelly, Plaintiff's impairments or treatment would cause her to be absent from work three out of five days of work. *Id.* When asked how much, on average, in an eight-hour work day, Plaintiff's impairments would cause her to be off task from job tasks, Dr. Kelly responded as follows: "Most of the day, I'd expect patient to be distracted by pain, sx [symptoms], limited breathing, difficulty moving & concentrating & distracted by anxiety &/or depression." *Id.*

## V.    DISCUSSION

Plaintiff argues, *inter alia*, that the ALJ erred in evaluating Dr. Kelly's opinions, which resulted in a flawed RFC. *Plaintiff's Brief*, ECF No. 16, pp. 12–19. This Court agrees.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence.  *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[4] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. §§ 404.1527, 416.927 *with* 20 C.F.R. §§ 404.1520c(a), 416.927c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at §§ 404.1520c(a), 416.920c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(1), 416.920c(c)(1). As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other

---

[4] As previously noted, Plaintiff's claims were filed on June 21 and June 28, 2019.

medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(2), 416.920c(c)(2).

The applicable regulations further require the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive he find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at §§ 404.1520c(b), 416.920c(b). "Specifically, the ALJ must explain how he considered the 'supportability' and 'consistency' factors for a medical source's opinion. . . . The ALJ may—but is not required to— explain how he considered the remaining factors." *Michelle K. v. Comm'r of Soc. Sec.*, No. 1:19-CV-01567, 2021 WL 1044262, at *4 (W.D.N.Y. Mar. 19, 2021) (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)).

At step four of the sequential evaluation process in this case, the ALJ found that Plaintiff had the RFC to perform a limited range of light work as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for the following additional limitations. The claimant can frequently handle with the right and the left; frequently finger with the right and the left; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; never be exposed to unprotected heights, moving mechanical parts, or operate a motor vehicle; frequently be exposed to humidity and wetness, dust, odors, fumes, and pulmonary irritants, extreme cold, and extreme heat; limited to performing simple, routine, and repetitive tasks, but not at a production rate pace (i.e. assembly line work); limited to simple work related decisions in using her judgment and dealing with changes in the work setting; and able to occasionally interact with supervisors, coworkers, and the public.

R. 24. In reaching this determination, the ALJ found, *inter alia*, that Dr. Kelly's opinion was not persuasive, reasoning as follows:

> The undersigned is not persuaded by the extreme limitations set forth by her treating physician Ronald Stroebel [sic], M.D.,[5] and her psychologist Linda Kelly, Ph.D., in their medical source statements from November 4, 2020, and, December 1, 2020, respectively, because these limitations are unsupported by the claimant's objective evidence and the progress notes throughout the adjudicating period that have been discussed throughout this decision (Exs. 11F [R. 617–20, containing Dr. Strobel's opinion]; 14F [R. 626–27, containing Dr. Kelly's opinion]).

R. 24.

Plaintiff challenges the ALJ's consideration of Dr. Kelly's opinion in this regard, arguing, *inter alia*, that the ALJ failed to explain why that opinion is not supported by or consistent with the record evidence and arguing further that substantial evidence does not support the ALJ's conclusory disregard of Dr. Kelly's opinion. *Plaintiff's Brief*, ECF No 16, pp. 13–17. In so arguing, Plaintiff points to, *inter alia*, her hospitalization for suicidal ideation in 2019. *Id.* at 16.

Plaintiff's arguments are well taken. "The new regulations promulgated by the Social Security Administration set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 FR 5844-01, and citing 20 C.F.R. §§ 404.1520c(b) and 416.920c(b)). As set forth above, "the ALJ's failure in this case to meet these minimum levels of articulation frustrates this court's ability to determine whether [his] disability determination was supported by substantial evidence." *Id.*; *see also Brownsberger v. Kizakazi*, No. 3:20-CV-01426, 2022 WL 178819, at *6–7 (M.D. Pa. Jan. 18, 2022) (finding that substantial evidence did not support the ALJ's assessment of medical opinions where the ALJ "makes no effort to compare or support their opinions with the record. . . . The ALJ does not provide any citations to specific

---

[5] Dr. Strobel's opinion is not at issue in this case.

14

evidence on the record to explain his reasoning and does not explain how he evaluated the opinions regarding the supportability and consistency factors").

In the present case, the ALJ simply concluded that Dr. Kelly's opinion was not persuasive because it was "unsupported by the claimant's objective evidence and the progress notes throughout the adjudicating period that have been discussed throughout this decision." R. 24. The ALJ provides no citation to any "objective evidence" and "progress reports" in support of this conclusion, nor does he explain how he considered the required factors of supportability and consistency. *Id*.

It is true that a procedural error in failing to expressly consider these factors may be harmless if the Court can "glean" how the ALJ considered the supportability and consistency of the opinion and a "searching review" of the record confirms that the ALJ did not violate the applicable regulations. *See Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (stating that "the ALJ committed procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record[,]" but that "[d]espite the ALJ's procedural error, we could affirm if 'a searching review of the record' assures us 'that the substance of the [regulation] was not traversed'") (quoting *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019)) (cleaned up). However, in the present case, the ALJ relied on a mischaracterization of Plaintiff's mental health treatment history when discounting Dr. Kelly's opinion. Specifically, as detailed above, not only was Plaintiff prescribed psychotropic medication, but she was also psychiatrically hospitalized in October 2019 after presenting a risk of self-harm; during that hospitalization, she participated in group therapy and, later, treated with Dr. Kelly for individual therapy. R. 457–64, 470–77, 510, 626–27. The ALJ does not address this inpatient admission, finding instead at step four only that Plaintiff's mental

15

health impairments were treated "conservatively with psychotropic medication, Cymbalta[.]" R. 23. Underscoring this mischaracterization of Plaintiff's psychiatric treatment, the ALJ recounted with apparent approval at step three of the sequential evaluation the notation by consultative examiner Hershel Pickholtz, Ed.D, that Plaintiff's treatment history consisted of "'one bout of depression [a week prior to her examination with Dr Pickholtz] for a short period of time' (Ex. 6F, p. 5 [R. 485])." R. 20. Based on this record, the Court cannot conclude that the ALJ properly considered the regulatory factors of supportability and consistency. *Cf. DeJesus v. Kijakazi*, No. 20-CV-06115-RAL, 2022 WL 1062914, at *10 (E.D. Pa. Apr. 8, 2022) ("By dismissing Dr. Kingry's opinion through conclusory statements, mischaracterizations of record evidence, lay opinions, and failure to resolve contradictory evidence, the ALJ's conclusion does not survive scrutiny even under the less restrictive 2017 regulations. A remand is warranted.").

Furthermore, the Court cannot conclude that the ALJ's defective reasoning in discounting Dr. Kelly's opinion is harmless, particularly where his RFC determination, R. 21, failed to include limitations incorporating Dr. Kelly's opinions that, *inter alia*, Plaintiff is unable to meet competitive standards in her ability to perform activities within a schedule, manage regular attendance and be punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods, and would miss three out of five work days. R. 626. *See also Murphy v. Comm'r of Soc. Sec.*, No. 1:19-CV-20122, 2020 WL 7022746, at *6 (D.N.J. Nov. 30, 2020) ("The ALJ's reliance on this misconception, along with other unsupported mischaracterizations of Plaintiff's physical abilities . . . permeates the ALJ's decision. As stated above, these errors cannot be separated from the ALJ's analysis of other record evidence such that the Court may determine whether substantial evidence supports

16

the ALJ's RFC analysis."). Notably, the vocational expert testified that no work would be available to a hypothetical individual who would, *inter alia*, be off task 20% of an eight-hour work shift and/or absent from work two days per month. R. 62–63, 65.

Finally, to the extent that the Acting Commissioner raises additional reasons why the ALJ properly discounted Dr. Kelly's opinion, *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 18, pp. 14–17, the Court cannot accept these *post hoc* arguments where the ALJ did not rely on these rationales in his decision. *See* R. 18–24. *See also Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) ("Our review must also be based on 'the administrative record [that was] already in existence' before the agency, not 'some new record made initially in the reviewing court' or 'post-hoc rationalizations' made after the disputed action.") (quoting *Rite Aid of Pa., Inc. v. Houstoun*, 171 F.3d 842, 851 (3d Cir. 1999)); *Fargnoli*, 247 F.3d at 44 n.7 (3d Cir. 2001) (stating that a district court should not substitute its own independent analysis for reasoning not mentioned by the ALJ) (citations omitted); *Rhodes v. Comm'r of Soc. Sec.*, No. CV 18-0678, 2019 WL 1042532, at *6 (D.N.J. Mar. 5, 2019) ("The Court is only permitted to consider the ALJ's decision based on the rationale contained in that decision; the Court is not to consider hypothetical rationales, which may justify the ALJ's decision, but which were not in fact underlying the opinion in question.") (citation omitted).

This Court therefore concludes that remand of the matter for further consideration of these issues is appropriate.[6] Moreover, remand is appropriate even if, upon further examination of Dr. Kelly's opinion and the RFC determination, the ALJ again concludes that Plaintiff is not

---

[6] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Kelly's opinion and the RFC determination, the Court does not consider those claims.

entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

## VI.   CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  January 11, 2023                                *s/Norah McCann King*
                                                       NORAH McCANN KING
                                                       UNITED STATES MAGISTRATE JUDGE